Argued November 30, 1972, reversed January 5, 1973

SMITH, *Appellant, v.* STATE ACCIDENT
INSURANCE FUND, *Respondent.*

504 P2d 1062

*Allan H. Coons,* Eugene, argued the cause for appellant. With him on the brief were Coons & Malagon, Eugene.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

This is an appeal by the claimant from a decision of the circuit court denying her any award for permanent partial disability, allegedly sustained as the result of an on-the-job injury occurring in January 1968. The hearing officer had awarded her 240 degrees. On appeal to the Workmen's Compensation Board by the defendant the Board reduced the award to 64 degrees. The workperson appealed that order to the circuit court, resulting in the denial of any award.

The defendant concedes, and the evidence is clear, that claimant suffered a compensable industrial injury. She received prompt medical treatment and remained under constant medical care and treatment thereafter. The injury resulted from a fall from a height of several feet to a concrete floor, claimant landing in what the medical reports refer to as a "prat fall" position. The injury was to the coccygeal and lumbar sacral area. She continued on her job as a cook in a cafe for a few months while receiving treatment until the pain and discomfort in the injured area

required her to stop working. Thereafter she was on permanent partial disability for approximately 18 months. The Closing and Evaluation Division then issued two determination orders, the last of which was on February 3, 1970, some two years after the injury. Neither of these allowed permanent partial disability. On February 16, 1970, claimant was involved in a motor accident, receiving serious injuries to her upper thoracic area, head and neck, and to one knee. The injuries included some broken ribs and a simple fracture of the right wrist. Most of the problems and resulting differences among the reviewing authorities below arise out of this unfortunate occurrence. Some time after the 1968 injury she was knocked down by a blow to the head by her husband, from whom she is now divorced. No claim for aggravation is asserted by the claimant here as a result of either of those occurrences.

As a result of the motor accident, Mrs. Smith filed a civil action for damages. The complaint filed in her behalf therein included the allegation that prior to the motor accident of February 16, 1970, Mrs. Smith was a healthy, able-bodied woman, and able to work. Mrs. Smith verified that complaint.

Three different views of the effect of this evidence were taken below.

The hearing officer concluded:

"The fact that claimant signed a complaint in a civil action, following her accident of February 1970, wherein she recited she was an able bodied woman, able to work, does not persuade me that she was so in fact. Legal pleadings are often overstated to give full leeway for subsequent jury findings or to set a high demand for leverage in negotiating a compromise settlement. * * *"

The Workmen's Compensation Board in its opinion stated:

"* * * One of the problems encountered by the Board is the charitable course taken by the Hearing Officer in discounting the claimant's contentions made with reference to the nonindustrial automobile accident. The Hearing Officer's opinion is that, 'Legal pleadings are often overstated to give full leeway for subsequent jury findings or to set a high demand for leverage in negotiating a compromise settlement.' The Board does not agree that a false complaint is to be condoned. If an exaggeration for 'leverage' proves anything, it is that a person who will exert exaggeration to obtain a higher settlement in one case is suspect when subjective complaints in another case are being weighed. * * * It is in fact a sad commentary upon modern morality if our mores have come to the point that such a course is so lightly cast aside without even being considered for impeachment purposes."

The circuit court in its opinion stated:

"* * * It is this Court's view that the pleadings referred to by the H. O. and the Board to the effect that the claimant was a strong, healthy, able-bodied person stands as a judicial admission * * *."

In her petition to the circuit court for review of the decision of the Workmen's Compensation Board, the claimant alleged:

"The Board erroneously penalized the workman for allegations made in a Circuit Court Complaint respecting an unrelated injury and erroneously evaluated the Complaint from a subsequent unrelated injury in cutting down the workman's award of disability."

In McCormick, Evidence 633, 635, § 265 (2d ed 1972), the author states:

"* * * A party's pleading in one case, whether

a final one, or one later withdrawn, amended or superseded, is freely usable against him as an evidentiary admission in any other litigation * * *."

*See also: Moudy v. Boylan,* 219 Or 448, 462-63, 347 P2d 983 (1959); *Stout v. Derringer,* 216 Or 1, 337 P2d 357 (1959); Wigmore, Evidence 52, 53, § 1066 (3d ed 1940).①

■ It is clear from an examination of the court's opinion below that it correctly treated the challenged pleading only as evidence to be weighed with all of the other testimony in determining what, if any, permanent disability the plaintiff sustained as a result of the industrial injury. The statement verified by the plaintiff in her complaint for damages arising out of the motor accident was admissible against her in this proceeding as an admission against interest. The

---

① "It is said that the utterances of the pleadings are merely conventional and therefore *fictitious allegations,* not to be taken as sincere and 'bona fide' statements. This is an objection which had weight when the common-law fictions of trover and ejectment and implied assumpsit were in vogue, and when the bill in chancery could be correctly said by John Wesley to be 'stuffed with stupid, senseless, improbable lies', and by Jeremy Bentham, a century later, still to be 'a volume of notorious lies.' Even then, the recognized conventions could be distinguished by the practitioner from the plain unvarnished claims. But to-day, in the great majority of jurisdictions, the reforms in pleading deprive this objection of all weight." (Emphasis in original.) Wigmore, Evidence 52, 53, § 1066 (3d ed 1940).

We note that the only explanation offered by claimant was that her lawyer prepared the complaint and she signed it. She did not deny that she was aware of its contents at that time.

For a discussion of the extent to which a party is bound by allegations of fact in jurisdictions where no verification of a pleading is required by a party, as in the federal practice under Rule 11, Federal Rules of Civil Procedure, 28 USCA 496, *see:* Frank R. Jelleff, Inc. v. Braden, 233 F2d 671, 63 ALR2d 400 (DC Cir 1956); Cleary and Strong, Evidence 551, 552, ch 14(A) (1969).

weight to be accorded it at each level of review was for that trier of fact. And so it is in this court. We share, generally, however, the view expressed by the Board, supra.

■ Our de novo examination of the record satisfies us that the Board correctly concluded, as did the hearing officer, that the claimant here does have some substantial low back and coccygeal area residuals directly resulting from the 1968 industrial accident, and that these are both permanent and partially disabling. We conclude that she is entitled to an award for permanent partial disability in the amount of 105 degrees.

Reversed.